■ SALVATORE D'ANGELIS et al., Plaintiffs, v LEONARD LITWIN et al., Doing Business as ARWIN 74TH STREET Co., et al., Appellants, and MEYERBANK ELECTRIC Co., INC., Respondent. LEONARD LITWIN et al., Doing Business as ARWIN 74TH STREET Co., et al., Third-Party Plaintiffs-Appellants, v ACME-ACE INC. et al., Third-Party Defendants-Respondents. SALVATORE D'ANGELIS et al., Plaintiffs, v EISENBERG SONS CARPENTRY, INC., Third-Party Defendant-Respondent. MEYERBANK ELECTRIC Co., INC., Fourth-Party Plaintiff-Respondent, v ACME-ACE INC. et al., Fourth-Party Defendants-Respondents. — Judgment, Supreme Court, Bronx County (Silbowitz, J.), entered on August 7, 1980, affirmed. All respondents filing briefs shall recover of appellants one bill of $75 costs and disbursements of this appeal. Concur — Kupferman, Sandler and Fein, JJ; Murphy, P. J., and Lynch, J., dissent in part in separate memoranda as follows.

Murphy, P. J. (dissenting in part). Plaintiff D'Angelis was an employee of Acme-Ace Inc. (Acme), the excavating subcontractor on the job site. On November 29, 1979, plaintiff was injured when he fell through a hole in a concrete floor slab. Suit was brought against defendant Arwin 74th Street Co., the owner of the project, and 74th Street Development Corp., the general contractor (the appellants). Plaintiffs' claims against appellants were settled for $210,000. Thereafter, appellants sought to recover under the indemnification provision in three subcontracts. Appellants' cross claim against subcontractor Meyerbank Electric Co., Inc. (Meyerbank) was dismissed at the end of the trial. Appellants' third-party claims against Eisenberg Sons Carpentry, Inc. (Eisenberg) and Acme were dismissed by the trial court after the jury had answered special questions with regard to those two subcontractors. For the following reasons a new trial should be ordered with regard to appellants' claims against those three subcontractors. Meyerbank, the electrical subcontractor, was required under its subcontract with appellants to provide the lighting facilities needed by the other trades. The plaintiff testified at trial that a bulb was not lit at the time of the occurrence. Therefore, even though he did testify that some sunlight illuminated the area, the jury should have been presented with the question of whether Meyerbank breached its subcontract by providing insufficient illumination. Appellants' cross claim against Meyerbank should be reinstated. The proof at trial tended to establish that Eisenberg was required to cover this hole. Thus, there was an evidentiary basis for the jury's affirmative answer to the first question that Eisenberg was required to protect the hole under the subcontract. However, the jury's answers to the second and third questions were inconsistent with its answer to the fourth question. (Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 518.) In answer to the fourth question, the jury found that Eisenberg's failure to perform its subcontract was the proximate cause of plaintiff's injury. In answer to the second question, the jury found that Eisenberg did not know and should not have known of the opening. The jury, in responding to the third question, found that Eisenberg did not have a reasonable period of time to discover the existence of the opening. If Eisenberg was not even required to know of the opening, it could not be held responsible for plaintiff's fall into the hole. The jury's

answers to the questions relating to Einsenberg showed that it was totally confused and did not rationally consider the issues presented *(Tassone v Gursky,* 5 AD2d 966). Therefore, the jury's answers to the questions involving Acme were also tainted by the jury's prior display of irrationality. Moreover, the questions relating to Acme were too general. The trial court should have specifically asked, *inter alia,* whether Acme breached its subcontract by prematurely removing the "rake" without authorization from the general contractor. Upon this record, this matter should be remanded for a new trial against these three subcontractors. A jury may then rationally consider at one time whether any or all of these subcontractors are liable for breach of their respective subcontracts.

Lynch, J. (dissenting in part). I would modify to reverse so much of the judgment as dismisses the appellants' third-party claim against the third-party defendant Eisenberg, remand for a new trial thereon, and otherwise affirm. The trial court properly dismissed the cross claim against the defendant Meyerbank. Its obligation under its subcontract was to install and maintain a temporary lighting system as needed by the other trades on this construction job. Three witnesses testified about the lighting conditions at the hole where the plaintiff fell. A construction supervisor stated that he examined the area shortly after the accident, that there were two extension bulbs there, and he believed that they were lighted. Plaintiff's co-worker, present when the accident occurred, stated that he and the plaintiff were walking from the 75th Street side of the building to the 74th Street side. It is unclear whether he meant from his next statement that there were lighted bulbs behind them toward 75th Street, or that the electrical line itself, with no lighted bulbs, was behind them. In any event, he said that ahead of them there was daylight "coming through those cracks". Most importantly the plaintiff himself testified that, when he came down the ramp to the level where the accident happened, the bulb that was there was unlighted, but, when he faced 74th Street, there was "a lot of daylight". It was enough so that he could see the hole after the accident. Thus, there was no prima facie case that an absence of artificial lighting was a proximate cause of the accident. I agree with Presiding Justice Murphy's dissent that the jury's answer to the Eisenberg question four rendered the jury's intention unfathomable and confusing, and that the verdict entered thereon should not stand. The question was whether "Eisenberg's failure to perform its contract was a proximate cause of the accident and injury to Salvatore D'Angelis". The jury answered "Yes". The confusion pointed out by Presiding Justice Murphy is underscored by comparing the court's charge to the jury and its comments when entering the verdict after the jury's answer. The court charged: "In order for the general contractor and the owner to prevail against a subcontractor they must establish that the subcontractor breached its contract by failing to perform that which was agreed to be performed and further that this breach was a proximate cause of Mr. D'Angelis' injury". When this charge was given, it was unrelated to any of the questions which were discussed at a later point in the charge. From this the jury could well have concluded that Eisenberg's liability hinged on its affirmative finding that Eisenberg had failed to perform and that this was a proximate cause. Yet, when it had found this affirmatively, the court entered a verdict of no liability, saying, "[the question] would make no difference with respect to the verdict in this case; that actually question four need never have been reached in this case with regard to whether a judgment on behalf of the defendant should have been found here. So that while the question was answered it may not have been answered correctly". The verdict entered upon the questions relating to the third-party defendant Acme-Ace should be affirmed. Two questions were presented: Whether Acme-Ace breached its

contract by failing to protect the opening; and, whether such a failure was the proximate cause of the accident. The jury answered "No" to both and the answers are supported by the evidence. Since no exception was taken to the lack of specificity of these questions, and their form (with an exception not pertinent here) appears to have been on consent of counsel, any attack for lack of specificity should not now be considered (see *Heilbronn v New York Life Ins. Co.,* 243 App Div 558).